**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD LOUIS STARKS** | : | |
| 12150 N. U.S. Highway 441 | : | |
| Ocala, FL 34475 | : | |
| | : | |
| and | : | |
| | : | |
| **CHRISTIAN STARKS** | : | |
| 12150 N. U.S. Highway 441 | : | |
| Ocala, FL 34475 | : | |
| Plaintiffs, | : | |
| | : | Civil Action |
| v. | : | No. _____ |
| **NOTHERN YORK COUNTY REGIONAL** | : | |
| **POLICE DEPARTMENT** | : | |
| 1445 E Canal Road | : | |
| Dover, PA 17315 | : | |
| | : | |
| and | : | |
| | : | |
| **HEIDELBERG TOWNSHIP OF YORK** | : | |
| **COUNTY, PENNYSLVANIA** | : | JURY TRIAL DEMANDED |
| 6424 York Road | : | |
| Spring Grove, Pennsylvania 17362 | : | |
| | : | |
| and | : | |
| | : | |
| **SERGEANT JACK C. ASPER** | : | |
| Northern York County Regional Police Department | : | |
| 1445 E Canal Road | : | |
| Dover, PA 17315 | : | |
| | : | |
| and | : | |
| | : | |
| **OFFICER STEVEN LEBO** | : | |
| Northern York County Regional Police Department | : | |
| 1445 E Canal Road | : | |
| Dover, PA 17315 | : | |
| | : | |
| and | : | |

|  |  |  |
|---|---|---|
| **LIETUNANT JOHN MIGATULSKI** | : | |
| Northern York County Regional Police Department | : | |
| 1445 E Canal Road | : | |
| Dover, PA 17315 | : | |
|  | : | |
| and | : | |
|  | : | |
| **WILLIAM K. KNIGHT** a/k/a **KENNETH** | : | |
| **KNIGHT** | : | : |
| 7369 Main Highway | : | |
| Abbotstown, PA 17301 | : | |
|  | : | |
| and | : | |
|  | : | |
| **MARVIN KNIGHT** | : | |
| 6900 Cannery Road | : | |
| Hanover PA, 17331, | : | |
| Defendants. | : | |

---

## COMPLAINT

**NOW COMES** Richard Louis Starks and Christian Starks, by and through chosen counsel Christopher D. Mandracchia, Esq., Charles Mandracchia, Esq., and Jeffrey Soderberg, Esq., complaining of Defendants, Heidelberg Township, York County, Pennsylvania ("Heidelberg Township") and Northern York County Regional Police Department (hereinafter "NYCRPD" or the "Police Department"), in their own right and by and through their agents and servants, Seargent Jack C. Asper ("Sgt. Asper") ,Officer Steven Lebo ("Officer Lebo"), and Lieutenant John Migatulski ("Lt. Migatulski") individually and in their own official capacity as Northern York County Regional Police Officers, and William K. Knight a/k/a Kenneth Knight and Marvin Knight, and in support thereof avers the following:

## NATURE OF THE ACTION

1.      Plaintiffs, Richard Louis Starks and Christian Starks, each bring this action for violation of his/their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and for pendent state law torts stemming from the incident that took place at 6876 Cannery Road and 6900 Cannery Road, in Heidelberg Township, York County, Pennsylvania on May 2, 2022 and has continued until present day.

2.      Law enforcement violated Plaintiffs' constitutional rights through failing to train and supervise police officers on issues of racial profiling, fabricating information, performing crime scene investigations, performing accident investigations, as well as inadequately responding to citizen complaints causing financial, emotional, and reputational damages to Plaintiffs.

3.      Northern Regional Police owed a duty to thoroughly and fairly investigate the assault on Mr. Richard Louis Starks and the people and customers of Paws including Mr. Christian Starks but breached that duty and negligently inflicted emotional distress on Mr. Plaintiffs Richard Starks and Christian Starks. Plaintiffs suffered humiliation, harassment, and disparagement by Defendants. On their behalf, the suit alleges false arrest and imprisonment, intentionally inflicting emotional distress, battery, assault, negligence, and violating their constitutional rights.

## <u>JURISDICTION AND VENUE</u>

4.      The constitutional claims in this matter are brought pursuant to 42 U.S.C. § 1983 and, as such, this court maintains federal question jurisdiction, as well as supplemental jurisdiction over the state law claims. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

5.      There lies supplemental jurisdiction over Plaintiffs' state-law claims because they arise out of the same common nucleus of operative facts as Plaintiffs' federal claims asserted herein.

6.      This Court may properly maintain personal jurisdiction over the Defendants because their contacts with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction, complying with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S, 310 (1945), and its progeny.

7.      Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and defendants are deemed to reside where they are subject to personal jurisdiction, rendering the Defendants a "resident" of the Middle District of Pennsylvania.

8.      The amount in controversy exceeds the requisite amount.

9.      Plaintiffs reside in Florida, and all Defendants reside in Pennsylvania; therefore, diversity of citizenship exists.

10.      Venue is proper in this court as the events complained of herein occurred in York County, Pennsylvania.

## PARTIES

11.      Plaintiff Richard Louis Starks (hereinafter "Mr. Starks"), is an adult mixed-race individual, born of a Hispanic and African-American Father and a Caucasian mother and currently residing in Florida.  Mr. Starks was involved in the management, ownership, and operations of Paws Pet Resort (hereinafter "Paws") located at 6876 Cannery Road, Hanover, Heidelberg Township, York County, Pennsylvania.

12.     Plaintiff Christian Starks (hereinafter "Christian Starks") is the son of Mr. Starks and managed Paws. Christian Starks' father is mixed-race and his mother is half Chinese and half Panamanian. Christian has dark skin and has physical features of an Asian-American individual.

13.     On the day of this incident the police Defendants were performing their duties acting under color of state law performing official duties as government employees acting on behalf of the Northern York County Regional Police Department on behalf of Heidelberg Township and/or agents of same.

14.     Heidelberg Township is a member and/or part of the Northern York County Regional Police Department. The police of such Police Department were performing duties necessary for the health and safety of the community.

15.     Defendant, the Northern York County Regional Police Department is a government agency with jurisdiction over several municipalities in York County, Pennsylvania and an address of 1445 E Canal Road, Dover, Pennsylvania 17315. It is governed by the board of commissioners, made up of eleven members, one from each municipality.

16.     Defendant, Sergeant Jack C. Asper, named herein individually and in his capacity as an employee of the Borough and Northern York County Regional Polic Department at the relevant time, is an adult individual with a workplace address, upon information and belief, at Northern York County Regional Police Department, 1445 E Canal Road, Dover, Pennsylvania 17315.

17.     Defendant, Officer Steven Lebo, named herein individually and in his capacity as an employee of the Borough and Northern York County Regional Polic Department at the relevant time, is an adult individual with a workplace address, upon information and belief, at

Northern York County Regional Police Department, 1445 E Canal Road, Dover, Pennsylvania 17315. Officer Lebo is a Senior Traffic Crash Reconstructionist and Crime Scene Technician.

18.     Defendant, Lieutenant John Migatulski named herein individually and in his capacity as an employee of the Borough and Northern York County Regional Polic Department at the relevant time, is an adult individual with a workplace address, upon information and belief, at Northern York County Regional Police Department, 1445 E Canal Road, Dover, Pennsylvania 17315.

19.     Each of the Defendants caused, and is legally responsible for, the incident, unlawful conduct, injuries, and damages alleged by personally participating in the unlawful conduct, or acting jointly or conspiring with others to act, by authorizing or allowing, explicitly or implicitly, policies, plans, customs, practices, actions or omissions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct, by failing or refusing to initiate and maintain adequate training or supervision, and thus constituting deliberate indifference to Plaintiffs' rights, and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

20.     Plaintiffs are informed and believe and therefore allege that at all times mentioned in this Complaint, Defendants, and each of them, were the agents, employees, servants, joint ventures, partners, and/or coconspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of that relationship with the other Defendants.

21.     In doing the acts and/or omissions alleged, Defendants, and each of them, acted under color of authority and/or color of state law at all relevant times.

22.     Plaintiffs are informed and believe, and therefore allege, that the violations of the Plaintiffs' constitutional rights complained of were caused by customs, policies, and/or practices of authorized policymakers of Defendant Heidelberg Township and/or other supervisory officials of Northern York County Regional Police Department, which encouraged, authorized, directed, condoned, and/or ratified the unconstitutional and unlawful conduct complained of in this Complaint. These customs, policies, and/or practices were the moving force behind the violations alleged, and include, but are not limited to, failing to maintain adequate policies, failing to adequately train, supervise, and control investigators and officers concerning investigations, racial profiling, racial discrimination, fabricating evidence, improper police investigations, failing to investigate and impose discipline on investigators and officers who employ improper investigation methods and discriminatory practices, and failing to adopt other remedial measures and policies to ensure that such violations do not recur.

23.     Defendants are liable for injuries caused by their acts and/or omissions to the same extent as a private person. Defendant Heidelberg Township and Northern York County Regional Police Department and/or its Board of Commissioners is/are vicariously liable for injuries proximately caused by the acts and/or omissions of its public employees, including Defendants Sgt. Jack Asper, Lt. John Migatulski, and Officer Steven Lebo.

**FACTUAL BACKGROUND**

24.     An incident, previously docketed at OTN R303502-3 and CP-67-CR-2961-2022, is alleged to have occurred on, or about, May 02, 2022, in York County, Pennsylvania (hereinafter the "Incident") where Richard Louis Starks received a phone call from his son, Christian Starks telling his father that a suspicious looking unknown-man, later identified as

William Kenneth Knight, entered the property of Paws and made inciteful and terroristic threats against the business, customers of said business, and Mr. Stark's family.

25.     Christian Starks, the son of Mr. Starks, managed Paws; Mr. Starks was involved in the management, ownership, and operations of Paws.

26.     Katelyn Ogle was an employee of Paws and witnessed the incident, She was in fear for her life when she saw Ken Knight screaming, yelling, and throwing his arms in the air. She was in fear as Ken Knight was yelling and screaming and made statements that "he was going to blow up the place" and that he would "return with a group of people" to "blow the place up" when referring to Paws. She hear Ken Knight make statements that he was going to poison and kill all the dogs. She then saw Ken Knight approach a customer, Kevin Schroeder, where he made threats to shoot Kevin Schroeder and reached to his back pocket as if he had a gun.

27.     Kevin Schroeder, was a customer of Paws. On May 02, 2022, he was picking up his pet from Paws where he overheard Ken Knight making threats towards the animals, and the business. Ken Knight reached toward his rear pocket towards a black object believed to be a gun where he was placed in fear for his life and the safety of others.

28.     On May 2, 2022 at around 8:45 A.M., Mr. Starks called emergency services at 9-1-1 seeking assistance from law enforcement, after he received an alarming phone call from his son, during one of the busiest times for pickup and drop-off, Christian Starks report to his father that an unknown man, later determined to be Ken Knight, was blocking the driveway, screaming, shouting, and threatening the customers and had a gun.

29.     Ken Knight was screaming, shouting, and threatening the customers and employees of Paws including Christian Starks, Katelyn Ogle and Kevin Schroeder, Ken Knight

stated that he would return with others, after wielding a black object believed to be a hand-gun, and abruptly leaving the business speeding off in a white Cadillac.

30.     During a time when public shootings are too prevalent, Mr. Starks was in fear for the life of his son and the people at Paws and was hopeful that 9-1-1would respond to help.

31.     Mr. Starks, Christian Starks and the employees of Paws were in fear for their life due to the fear instilled in them by the actions of Ken Knight and his father Marvin Knight.

32.      Shortly thereafter, Mr. Starks receives a subsequent phone call from his son and is told that the unknown man had returned to the business, made threats, and was accompanied by another unknown individual.

33.     At approximately 8:55 AM on May 2, 2022, Mr. Starks called 911 again time to report that the unknown man had returned to the business with another individual and was continuing to make threats, before leaving the business again in a white Cadillac.

34.     Ken Knight did return, and is later determined that the passenger in the vehicle was his father Marvin Knight.

35.     During the 911 call, Mr. Starks is transferred from York County to Adams County to York County, upon which Mr. Starks learns that his first call to 911 was not of record and no help was currently on the way.

36.     At approximately 9:03 AM on May 2, 2022, Mr. Starks called 911 again, fearing for the safety of the business, the customer, the dogs, the employees, and his family, to which no estimate was provided.

37.     Mr. Starks and Christian Starks viewed the Ken Knight on the next property and believed that the Ken Knight was returning to Paws for a third time to make good on his threats and were in fear for their life.

38.     Mr. Starks was not only in fear for his own life, but the life of his son and the other people at Paws. Mr. Starks and Christian Starks retrieved firearms from their gun safe as they were in fear for their life.

39.     Due to the threat of the Ken Knight returning a third time to make good on his threats of violence, Mr. Starks left Paws in his vehicle to stop the Cadillac from returning a third time and in hopes of obtaining the license plate for 9-1-1.

40.     While on the phone with 9-1-1, in order to obtain the white Cadillac's license plate number and to prevent Ken Knight from returning to Paws, Mr. Starks drives towards the Knights Family Farm located at 6900 Cannery Road, Hanover, Pennsylvania, where he eventually stopped short of the railroad crossing.

41.     Mr. Starks lost sight of the Ken Knight while driving towards the last known position of Ken Knight. Upon enter the driveway/parking area for the farm stand, Mr. Starks saw the white Cadillac heading over the train tracks toward him.

42.     After being stopped for a few moments, Ken Knight drove the Cadillac on the access roadway towards the Tesla in the direction of Cannery Road.

43.     As the Cadillac passed Mr. Starks in the Tesla, Mr. Starks exited the Tesla and gave the 911 caller the license plate to the Cadillac.

44.     Mr. Starks re-entered the Tesla, turned around on the access roadway and proceeded to head in the same direction as the Cadillac.

45.     When Ken Knight stopped the Cadillac, Mr. Starks drove the Tesla on the left of the access roadway to travel around the Cadillac. While doing so, Ken Knight exited the Cadillac and kicked the passenger side of the Tesla.

46.     Mr. Starks drove forward a short distance, stopped and exited the Tesla to view the damage that Ken Knight did while kicking the passenger side of the Tesla.

47.     When he exited the Tesla, Mr. Starks walked down the driver's side of the Tesla and around the rear in a counterclockwise direction to view the damage.

48.     While standing at the right rear corner of the Tesla, Mr. Starks heard the engine of the Cadillac increase in sound. He turned to the left and observed Ken Knight accelerating the Cadillac towards him and the Tesla.

49.     As Mr. Starks was moving out of the way towards the rear of the Tesla, the Cadillac drove at him and struck him and the Tesla causing damages and injuries.

50.     The Cadillac continued forward and struck the rear of the Tesla. The Cadillac pushed the Tesla forward. The Cadillac violently impacted the Tesla with the Tesla coming to rest several feet in front of the Cadillac on the access roadway.

51.     Mr. Starks got up off the ground and re-entered the Tesla to leave the area. However, Tesla's safety systems had shut down the vehicle. Therefore, Mr. Starks then exited the Tesla.

52.     At this point, Ken Knight accelerated the Cadillac striking the Tesla again. The impact propelled the Tesla forward and rotated counterclockwise where it comes to rest perpendicular to the access roadway.

53.     After the impact with the Tesla, Ken Knight steered the Cadillac to the right, drove around the Tesla, partially off the access roadway and continued on the access roadway towards the food stand located toward cannery road.

54.     Ken Knight gathered more speed and turned around at the structure and drove the Cadillac again back down the access roadway towards Mr. Starks and the Tesla.

55.     Mr. Starks observed the approaching Cadillac and re-entered the Tesla to drive away. However, after Mr. Starks attempts to re-start the Tesla, Mr. Starks becomes aware the safety system has shut down the Tesla, and cannot start the Tesla.

56.     During the 9-1-1- call you can hear Mr. Starks attempting to start the Tesla, however it will not start as it is in "limp mode" due to the violent impact, assault, and battery of William Ken Knight.

57.     While seated in the driver's seat, Mr. Starks observed Ken Knight drive forward and accelerate the Cadillac down the access roadway towards the passenger side of the disabled Tesla.

58.     Ken Knight continued to accelerate and steer the Cadillac directly into the passenger side of the Tesla causing a violent impact to the Tesla and Mr. Starks who was inside the Tesla.

59.     The impact caused the Tesla to move violently laterally and rotate clockwise before coming to rest over twenty (20) feet, partially on the access roadway and grassy area next to the access roadway.  The force was a violent and severe.

60.     The impact caused the Cadillac's driver side airbag to deploy. However, Ken Knight reverses in an attempt to accelerate again towards the passenger side of the Tesla.

61.     As the Cadillac is accelerating towards the passenger side of the Tesla, again, Mr. Starks fires several rifle rounds through the passenger side door window to stop the violent impact and defend his life.

62.     Ken Knight was operating a 2007 General Motors Cadillac DTS four door, when he struck Mr. Starks and the Tesla. The Cadillac displayed a Pennsylvania registration license plate.

63.     The Cadillac incurred damage to the front windshield, grill, hood, and bumper. Additional damage was observed on the driver side front quarter panel. The Cadillac did not have any bullet holes or damage to the rear of the vehicle.

64.     Ken Knight caused the damages to his own Cadillac and to Mr. Starks and his Tesla.

65.     According to the Bosch Crash Data Retrieval Tool program, the Cadillac had an Event Data Recorder Module (EDR) which could be downloaded.

66.     Defendants did not retrieve the information contained on the EDR from either the Cadillac or the Tesla.

67.     Mr. Starks was operating a 2020 Tesla Model Y, four-door, built in Fremont, California in January 2020. The Tesla displayed a Florida registration license plate.

68.     The Tesla incurred damage to the left rear bumper, trunk, right front and rear passenger side doors, and right rear quarter panel. Both the right front and rear passenger side windows were shattered.

69.     Almost one-hour after the Incident began, Officers arrived, the first on scene was Lt. John Migatulski.

70.     Lt. John Migatulski. testified at Trial on April 03, 2024 that it took him two (2) to six (6) minutes to respond to Paws from the NYCRPD Station where he was located at the time of the Incident.

71.     Sgt. Jack Asper arrived later to the Incident but was on what appears to be his personal cell phone talking to Lt. Migatulski when he arrived at the Incident. Sgt. Jack Asper made determinations of guilt and innocence without performing a proper investigation, did not

preserve the crime scene, and fabricated evidence through failing to investigate and make conclusions not supported by facts.

72.    Sgt Jack Asper used racially discriminatory language when referring to Mr. Starks and Christian Starks. Mr. Starks was referred to as "foreign" and the "fat guy" and Sgt. Jack Asper referred to Christian Starks as this "Chinese guy, korean guy, or whatever…"

73.    Sgt. Jack Asper made conclusions not supported by facts and continually made material false statements, failed to properly secure the crime scene, and directed an investigation toward Mr. Starks also referred to as the "fat guy" and his son the "Chinese guy, Korean guy, or whatever."

74.    Sgt. Jack Asper makes statements regarding allegations of drug activity by Mr. Starks. He suggests to other officers during the investigation that Mr. Starks and/or his family are likely drug dealers and instilled his prejudice and discriminatory views on other police officers on the scene. Sgt. Jack Asper racially discriminated against Mr. Starks and Richard Starks.

75.    Officer Steven Lebo, the affiant on the criminal matter, arrived in order to collect evidence for an accident reconstruction that was never performed.

76.    Officer Lebo failed to perform a proper police investigation, false and/or misleading statements in the affidavit of probable cause, failed to disclose exculpatory and/or impeachment evidence, failed to perform an accident reconstruction, failed to perform ballistic testing, and fabricated evidence in violation of the Mr. Starks and Christian Starks constitutional rights.

77.    On May 4, 2022, Officer Lebo interviewed Ken Knight at the NYCRPD Headquarters in Dover, Pennsylvania. The interview was audio recorded. In the interview, Ken Knight said he wanted to take pictures of an area of land which was in dispute between his

14

family and Mr. Starks. While attempting to take pictures, a confrontation occurred between him and Mr. Starks. Ken Knight makes multiple statements that contradict the physical facts of the Incident.

78.     Ken Knight also made a statement that are preserved on the Body Cam of Sgt. Jack Asper. Ken Knights statements to Sgt. Asper contradict his statements to Officer Lebo and his testimony at the preliminary hearing and the trial of the criminal matter.

79.     Ken Knight told Sgt. Jack Asper that he was not shot with a shotgun, however, Sgt. Jack Asper continually told other police officers and emergency services personnel, including medical services, that Ken Knight was shot with "birdshot" when no shotgun was ever fired, nor did any evidence exist that a shotgun was fired.

80.     Sgt. Jack Asper told multiple officers to disregard the evidence as Mr. Starks was the "aggressor" and was convinced in his belief that Mr. Starks was the aggressor and should be charged before he even walked out of his own police vehicle.

81.     Sgt. Jack Asper failed to perform a proper police investigation, racial profiled Mr. Starks and Christian Starks, failed to follow protocols and/or procedures, caused others to believe false statements by telling officers involved that "the fat guy did it" or "he is the aggressor" when referring to Richard Starks.

82.     Sgt. Jack Asper made a rush to judgment, based in racial discrimination,  without properly examining evidence and caused a "whisper down the lane" taint to the whole investigation as Sgt. Jack Asper made statements that the alleged wounds to Ken Knight were "birdshot" when in reality the wounds were caused by Ken Knight ramming his vehicle in to the Tesla and Mr. Starks.

83.     Officer Lebo interviewed Ms. Diehl on May 3, 2022, at her residence of 6879 Cannery Road. On the morning of May 2, 2022, while Ms. Diehl  was inside her residence, she heard the engine of the Cadillac pass by her residence heading towards the Knight's Farm residence. A short time later she saw a purple Tesla traveling in the same direction. Ms. Diehl explained she looked outside towards the Knight's Farm and saw the white Cadillac and the purple Tesla facing each other. At this point, she decided to begin taking pictures with her cell phone. Ms. Diehl's interview is recorded on body camera video and via 9-1-1 call.

84.      Ms. Diehl allegedly observed the Cadillac go around the Tesla (heading towards Cannery Road). She saw the Cadillac come back towards the Tesla and hit the passenger side. Ms. Diehl stated she saw the Cadillac back up and strike the Tesla a second time. After the second impact, Ms. Diehl heard rapid gunfire. After hearing the gunfire, Ms. Diehl called 911.

85.     In all of the statements made by Ms. Diehl, prior to trial, Ms. Diehl states that she heard crashes then gunshots. However, it was later learned that she changed her statement at some point during witness interview with ADA Kaydin Brown, however, those statements were not disclosed until in the middle of criminal jury trial.

86.     A preliminary hearing was held on June 29, 2022, where Ken Knight testified, and Officer Lebo testified.

87.     Officer Lebo stated that he charged Mr. Starks because he believed the facts supported the testimony of William Ken Knight and to the truthfulness of the statements contained within the Affidavit of Probable Cause Police Criminal Complaint.

88.     Ken Knight gave multiple statements that were inconsistent and not reliable and a sufficient and proper investigation was not completed to support the multiple stories of Ken Knight.

89.     The Tesla and Cadillac were impounded as evidence; however, no attempt was made by Law Enforcement to download the EDR. Officer Lebo being an accident investigator, with an understanding of the tools, systems, and methodologies of crash investigations should have downloaded the EDR's from the Cadillac and the Tesla where he would have known that William Ken Knight was being deceitful and lied to Police.

90.     Mr. Starks was forced to retain lawyers, hire experts, and request an on-scene investigation to do the work that the police should have done according to proper police protocol and procedure for a shooting with a crash scene investigation.

91.     Officer Lebo took the time to use the TDS data collector to collect data in order to complete a 3-D diagram and renderings of the crime scene. He used a Sokkia theodolite and TDS recond data collector using MFx data collection software. Diagrams were to be created in FaroHD on a later date. However, no diagrams or reconstruction attempts were performed or even attempted to be performed by the NYCRPD. Had Officer Lebo, and/or NYCRPD completed the diagrams then it would have shown that Mr. Starks was the victim, and that Ken Knight was the aggressor using his vehicle as a weapon attempting to kill Mr. Starks.

92.     During the preliminary hearing and evidence records from the case show that there were eight (8) spent casings matching the caliber of Mr. Starks AR15 found inside the driver and passenger compartment of the Tesla.

93.     No casings were found outside the Tesla. However, Law Enforcement did not secure the casings as they were still present in the vehicle when an expert for Mr. Starks performed a crash investigation on February 17, 2023, over nine (9) months after the Incident. Officer Maxwell Ruby of NYCRPD even drafted and signed off on a Receipt Inventory for the

casings, however, as casings were still in the Tesla nine months later, they were never actually received, and were never tested.

94.     William Ken Knight made multiple statements that he took pictures with a camera during the Incident, he even stated that he took a picture of Mr. Starks pointing a rifle at him. However, Law Enforcement never recovered a camera or retrieved any pictures or downloaded the phone of William Ken Knight. William Ken Knight even gave Officer Lebo express permission to do so during an interview.

95.     On May 02, 2022 Betty Knight and Jason Knight both received phone calls, from upon information and belief, Lt. Migatulski regarding the Incident and in regards to their requests to retrieve evidence or understand why Ken Knight was being charged. Interestingly, no reports were produced regarding those calls made by Lt. Migatulski.

96.     Law Enforcement allowed Betty Knight, wife of Ken Knight, to enter the Cadillac to retrieve her purse and failed to provide a chain of custody or evidence receipt. The evidence just went missing. Upon information and belief, Ken Knight's black hand gun was in her purse but NYCRPD allowed the purse to disappear along with exculpatory evidence.

97.     According to the Bosch Crash Data Retrieval Tool Program, the Tesla's Event Data Recorder could be downloaded via the Tesla Kit and the available software on the Tesla manufacturer's website. Law Enforcement did not perform an investigation of the EDR or retrieve the data from either the Tesla or the Cadillac.

98.     To defend his life and liberty, Mr. Starks, at his own expense, hired and had performed an accident scene investigation by Michael Miller, a private accident reconstructionist and former police officer.

99.     NYCRPD and Defendants failed to properly secure the crime scene and perform follow-up investigations.

100.    NYCRPD and Defendants fabricated evidence.

101.    NYCRPD and Defendants did not do a comparative analysis of bullet fragments.

**CRIMINAL CASE PROCEDURAL HISTORY**

102.    A full preliminary hearing was held on the matter on June 29, 2022, where it is alleged that Defendant shot the alleged "victim" Ken Knight", after Ken Knight purposefully crashed his car into Defendant and Defendant's vehicle.

103.    On February 17, 2023, Defendant, by and through his counsel and experts, performed an inspection and analysis of the vehicles involved in this Matter, in order to perform a crash analysis and crash investigation. Officer Stephen Lebo was present for the inspection by Defense. Bullet casings were found to still be inside the vehicles.

104.    On May 11, 2023, and multiple times through the criminal proceedings, the Commonwealth represented to the Court and Defense, in open Court, that the Commonwealth had provided all discovery documents and all discovery/*Brady* materials in their possession and control.

105.    This jury trial was set for a date certain trial on October 31, 2023, however, was continued, and was set for trial on April 01, 2024 due to a medical emergency of Mr. Starks attorney.

106.    It was later discovered that prior to the trial set for October of 2023, ADA Brown and ADA other learned that one of the key witnesses in this case had changed her story. The modification of her statement was material and prejudicial to Defendant. However, ADA Brown

and/or ADA  and/or Defendants did not disclose the material exculpatory evidence and impeachment materials.

107.    During the October 2023 meeting, Attorneys for Commonwealth heard material statements from Tammy Diehl that contradict all evidence the Commonwealth has provided and is known to Defendant. The Commonwealth did not create a report or disclose the statement that was inconsistent with all prior statements of Tammy Diehl.

108.    ADA's proceeded with prosecution of Mr. Starks with the knowledge that they had intentionally, recklessly suppressed exculpatory evidence by coordinating with the NYCRPD to not gather or complete evidence during the crime scene investigation that they knew would be exculpatory, and further withheld a material witnesses change in key testimony that directly impacted Mr. Starks criminal defense, the expert report and reconstruction, and the video created.

109.    Mr. Starks spent over $150,000.00 dollars in hiring experts, investigators, reconstructions, Attorney Fees and other items and services needed to prepare a proper defense due to the deprivation of his Constitutional Rights.

110.    Mr. Starks was fearful of an unfair trial, and fearful of what information would be presented at trial, as the evidence presented to this point was not sufficient to establish probable cause that Mr. Starks committed the crimes charged.

111.    Mr. Starks, by and through counsel, made multiple efforts to prevent an unfair trial and the continual deprivation of Mr. Starks constitutional rights. However, as the prosecution y withheld exculpatory and impeachment evidence defendant was deprived of his right to a fair trial.

112.    Attorneys for Commonwealth, Attorney Kaydin Brown and Attorney Justin Baron, met with Tammy Diehl to prepare her for trial in October of 2023 and March of 2024 where material statements were made that contradict the statement of Tammy Diehl. However, said information was not disclosed until they were forced to disclose it at trial.

113.    The Commonwealth failed to make mandatory disclosures of material impeachment and/or exculpatory evidence, in violation of Defendant's rights under the Constitution of the United States and the Constitution of the Pennsylvania, Brady, and Rule 573 of the Pennsylvania Rules of Evidence, even after Defendant's repeated specific and general requests for such evidence. *See* Defendant's December 2022 Motion to Compel; Defendant's June 2023 Motion to Compel and Set a Date Certain; Defendant's Motion in Limine; Memorandum of Law in Support of Defendant's Motion in Limine.

114.    The Commonwealth's failure to disclose and suppression of material impeachment and/or exculpatory evidence is a *Brady* violation resulted in the deprivation of Defendant's right to due process and right to a fair trial under the Constitution of the United States of America and The Constitution of the Commonwealth of Pennsylvania.  U.S. Const. amend. XIV; Pa. Const. art. I, § 9; *Brady v. Maryland*, 373 U.S. 83; *Giglio v. United States*, 450 U.S. 950 (1997); and, *Com. v. Moose*, 602 A.2d 1265 (Pa. 1992).

115.    On April 01, 2024 this Matter Jury Selection and Motions were heard.

116.    The Commonwealth was in possession of the evidence, intended to use evidence, knew Defendant did not have this evidence, but yet proceeded to make statements and representations on multiple occasions that the Commonwealth had provided Defense with all material evidence, even as late as April 1, 2024, prior to the beginning of trial.

117.    On April 02, 2024 opening statements were presented to the jury and commonwealth witnesses testified.

118.    During the October 2023 meeting, Attorneys for Commonwealth heard material statements from Tammy Diehl that contradict all evidence the Commonwealth has provided and is known to Defendant.

119.    Attorneys for Commonwealth, Attorney Kaydin Brown and Attorney Justin Baron, met with Tammy Diehl to prepare her for trial in March 2024 where material statements were made that contradict all evidence provided and known to Defendant.

120.    The version of events Tammy Diehl testified to on April 2, 2024 directly contradict her previous statements per the Police Reports of Officer Stephen E Lebo and Officer Maxwell A Ruby, Body Worn Cameras of Officer Maxwell A Ruby and Officer Isaac Burris, and Tammy Diehl's May 2, 2022 911 Call. This evidence is favorable to Defense because it is impeachment material.

121.    Defendants caused harm and damages to Mr. Starks and deprived of his Constitutional Rights to Due Process, Fair Trial, Travel, and caused a loss of his liberty interest and property, necessarily including financial losses.

122.    As such, "prejudice ensued." The evidence Commonwealth failed to disclose to Defendant materially prejudiced defendant because trial has already begun and Defendant has given opening statements that are now in direct contradiction with what the Commonwealth failed to disclose. This deprives Defendant's Constitutional Right to a fair jury trial, since Defendant was deprived the opportunity to present an opening statement with all evidence in front of him and Defendant was forced to proceed trial without all of the evidence at trial.

123.    The Commonwealth failed to make mandatory disclosures of material impeachment and/or exculpatory evidence, in violation of Defendant's rights under the Constitution of the United States and the Constitution of the Pennsylvania, Brady, and Rule 573 of the Pennsylvania Rules of Evidence, even after Defendant's repeated specific and general requests for such evidence.  See Defendant's December 2022 Motion to Compel; Defendant's June 2023 Motion to Compel and Set a Date Certain; Defendant's Motion in Limine; Memorandum of Law in Support of Defendant's Motion in Limine.

124.    The Commonwealth's failure to disclose and suppression of material impeachment and/or exculpatory evidence is a Brady violation where the proper remedy is a mistrial and has resulted in the deprivation of Defendant's right to due process and right to a fair trial under the Constitution of the United States of America and The Constitution of the Commonwealth of Pennsylvania.  U.S. Const. amend. XIV; Pa. Const. art. I, § 9; Brady v. Maryland, 373 U.S. 83; Giglio v. United States, 450 U.S. 950 (1997); and, Com. v. Moose, 602 A.2d 1265 (Pa. 1992).

125.    Due to the intentional, malicious, reckless, grossly negligent, and negligent conduct of the Defendants, Mr. Starks suffered damages due to the violation of his constitutional rights as guaranteed by the US Constitution and PA Constitution.

126.    On April 03, 2024, prior to addressing the Brady violation of The York County District Attorney's Office, the District Attorney's Office dismissed all charges with prejudice. *See* docket for CP-67-CR-2961-2022 incorporated by reference herein as if set more fully at length.

127.    Plaintiff Richard Starks and Plaintiff Christian Starks suffered damages in an amount greater than $150,000.00.

## COUNT I
## DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW
### (Plaintiff Richard Starks v. Defendant Officer Lebo)

128.    All previous paragraphs are incorporated by reference herein as if set more fully

at length.

129.    Federal law prohibits discrimination on the ground of race in connection with a

person's rights under the law. See 42 U.S.C.S. § 1981.[1]

130.    Likewise, the right to equal protection under the law is guaranteed by the United

States and Pennsylvania constitutions.  U.S. Constitution, Amend. XIV; Pa. Constitution, Art. I,

Sec. 29.

131.    The right of freedom from unreasonable searches and seizures also is guaranteed

by the United States and Pennsylvania constitutions.  U.S. Constitution, Amend. IV; Pa.

Constitution, Art. I, Sec. 8.

132.    Officer Lebo while acting under color of state law deprived Richard Starks of his

rights under the Constitution and law of the United States, in violation of 42 U.S.C. Section

1983, including violating his 4th amendment rights including to be free from searches and

seizures, violating the duty to disclose or act upon exculpatory evidence, failing to conduct a

constitutionally adequate and independent investigation of the facts and the evidence, violating

the duty to gather, test, and preserve evidence, violating the rights of accused in criminal

proceedings,  rights under Brady v. Maryland, and rights to  Due Process under the law, violating

---

[1] Section 1981 provides in pertinent part:

 "(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in
every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and
property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and
exactions of every kind, and to no other.  42 U.S.C.S. § 1981.

the right to bear arms and the right to travel, and in otherwise violating of his Civil Rights under both the US Constitution and the Pa. Constitution including the right against false arrest and malicious prosecution where Richard Starks was actually innocent of the charges lodged against him.

133.    Officer Lebo's actions were malicious and reckless without due regard for Richard Starks' rights under Federal law and the Federal and Pa. Constitutions. No reasonable police officer could have believed the detention of Richard Starks was lawful of that the failure to conduct a proper investigation was reasonable, adequate, or justified, and constituted acts of deliberate indifference.

134.    As a result of such violations by Officer Lebo of his constitutional rights and rights under federal law, Richard Starks has sustained and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm including but not limited to the loss of his interest and rights and revenues and profits with regard to the pet care business known as Paws Resort and the cost of defending his unlawful arrest and prosecution, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions of Officer Lebo.

WHEREFORE, Plaintiff Richard Starks demands an award of compensatory damages against Defendant Steven Lebo in an amount in excess of $150,000, an award of punitive damages and an award of statutory damages as applicable under the law, reasonable attorney's fees and costs to the extent allowable under the law, and such other and further relief as this Court determines is reasonable and just based on the evidence and the law.

## COUNT II

### DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW
**(Plaintiff Richard Starks v. Defendant Sergeant Asper)**

135.    All previous paragraphs are incorporated herein as if set more fully at length.

136.    Federal law prohibits discrimination on the ground of race in connection with a person's rights under the law. See 42 U.S.C.S. § 1981.

137.    Likewise, the right to equal protection under the law is guaranteed by the United States and Pennsylvania constitutions.  U.S. Constitution, Amend. XIV; Pa. Constitution, Art. I, Sec. 29.

138.    The right of freedom from unreasonable searches and seizures also is guaranteed by the United States and Pennsylvania constitutions.  U.S. Constitution, Amend. IV; Pa. Constitution, Art. I, Sec. 8.

139.    Sgt. Asper while acting under color of state law deprived Richard Starks of his rights under the Constitution and law of the United States, in violation of 42 U.S.C. Section 1983, including violating his 4th amendment rights including to be free from searches and seizures, violating the duty to disclose or act upon exculpatory evidence, failing to conduct a constitutionally adequate and independent investigation of the facts and the evidence, violating the duty to gather, test, and preserve evidence, violating the rights of accused in criminal proceedings,  rights under Brady v. Maryland, and rights to  Due Process under the law, violating the right to bear arms and the right to travel, and in otherwise violating of his Civil Rights under both the US Constitution and the Pa. Constitution including the right against false arrest and malicious prosecution where Richard Starks was actually innocent of the charges lodged against him.

140.    Sgt. Asper's actions were malicious and reckless without due regard for Richard Starks' rights under Federal law and the Federal and Pa. Constitutions. No reasonable police officer could have believed the detention of Richard Starks was lawful of that the failure to conduct a proper investigation was reasonable, adequate, or justified, and constituted acts of deliberate indifference.

141.    As a result of such violations by Sgt. Asper of his constitutional rights and rights under federal law, Richard Starks has sustained and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm including but not limited to the loss of his interest and rights and revenues and profits with regard to the pet care business known as Paws Resort and the cost of defending his unlawful arrest and prosecution, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions of Sgt. Asper.

WHEREFORE, Plaintiff Richard Starks demands an award of compensatory damages against Defendant Jack C. Asper in an amount in excess of $150,000, an award of punitive damages and an award of statutory damages as applicable under the law, reasonable attorney's fees and costs to the extent allowable under the law, and such other and further relief as this Court determines is reasonable and just based on the evidence and the law.

## COUNT III

### DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW
### (Plaintiff Richard Starks v. Defendant Lieutenant Migatulski)

142.    All previous paragraphs are incorporated herein by reference as though fully set forth at length.

143.     The right to equal protection and due process under the law is guaranteed by the United States and Pennsylvania constitutions.  U.S. Constitution, Amend. XIV; Pa. Constitution, Art. I, Sec. 29.

144.     Lt. Migatulski while acting under color of state law deprived Richard Starks of his rights under the Constitution and law of the United States, in violation of 42 U.S.C. Section 1983, including violating his rights to Equal Protection and Due Process under the law and in otherwise violating of his Civil Rights under both the US Constitution and the Pa. Constitution.

145.     Lt. Migatulski's actions including deliberately and intentionally failing to respond to multiple 911 emergency calls reporting a person armed with a gun threatening individuals at a business and residential property were malicious and reckless without due regard for Richard Starks' rights under Federal law and the Federal and Pa. Constitutions. No reasonable police officer could have believed the failure to respond to multiple 911 emergency calls reporting a person armed with a gun threatening individuals at a business and residential property was reasonable, adequate, or justified, and such failure constituted deliberate indifference.

146.     As a result of such violations by Lt. Migatulski of his constitutional rights and rights under federal law, Richard Starks has sustained and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm including but not limited to the loss of his interest and rights and revenues and profits with regard to the pet care business known as Paws Resort and the cost of defending his unlawful arrest and prosecution, all of which were proximately and directly caused by the unconstitutional and unlawful actions of Lt. Migatulski.

WHEREFORE, Plaintiff Richard Starks demands an award of compensatory damages against Defendant Lt. Migatulski in an amount in excess of $150,000, an award of punitive damages and an award of statutory damages as applicable under the law, reasonable attorney's fees and costs to the extent allowable under the law, and such other and further relief as this Court determines is reasonable and just based on the evidence and the law.

## COUNT IV

### DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW
### (Plaintiff Christian Starks v. Defendant Lieutenant Migatulski)

147.    All previous paragraphs are incorporated herein by reference as though fully set forth at length.

148.    The right to equal protection and due process under the law is guaranteed by the United States and Pennsylvania constitutions.  U.S. Constitution, Amend. XIV; Pa. Constitution, Art. I, Sec. 29.

149.    Lt. Migatulski while acting under color of state law deprived Christian Starks of his rights under the Constitution and law of the United States, in violation of 42 U.S.C. Section 1983, including violating his rights to Equal Protection and Due Process under the law and in otherwise violating of his Civil Rights under both the US Constitution and the Pa. Constitution.

150.    Lt. Migatulski's actions including deliberately and intentionally failing to respond to multiple 911 emergency calls reporting a person armed with a gun threatening individuals at a business and residential property were malicious and reckless without due regard for Christian Starks' rights under Federal law and the Federal and Pa. Constitutions. No reasonable police officer could have believed the failure to respond to multiple 911 emergency calls reporting a person armed with a gun threatening individuals at a business and residential property was reasonable, adequate, or justified, and such failure constituted deliberate indifference.

151.    As a result of such violations by Lt. Migatulski of his constitutional rights and rights under federal law, Christian Starks has sustained and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm, all of which were proximately and directly caused by the unconstitutional and unlawful actions of Lt. Migatulski.

WHEREFORE, Plaintiff Christian Starks demands an award of compensatory damages against Defendant Lt. Migatulski in an amount in excess of $150,000, an award of punitive damages and an award of statutory damages as applicable under the law, reasonable attorney's fees and costs to the extent allowable under the law, and such other and further relief as this Court determines is reasonable and just based on the evidence and the law.

## COUNT V

### DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW
**(Plaintiffs Richard Starks and Christian Starks v. Defendant Northern York County Regional Police Dept. and/or its Board of Commissioners)**

152.    All previous paragraphs are incorporated herein by reference as though fully set forth at length.

153.    Defendant Northern York County Regional Police Dept. and/or its Board of Commissioners (the "NYCRPD") is liable under 42 U.S.C. Section 1983 for the unlawful deprivation of Richard Starks' and Christian Starks' rights under federal law and the constitution, as a result of the Police Department's policies, practices and/or customs.

154.    NYCRPD's course of conduct regarding Officer Lebo's, Sgt. Asper's and Lt. Migatulski's unlawful conduct constitutes a custom and practice of the NYCRPD, and constitutes deliberate indifference.

155.    NYCRPD has a history of outrageous and unlawful conduct which includes, but is not limited to, false arrest and malicious prosecution of a criminal defendant who is actually innocent (as was Richard Starks) and other unlawful conduct. including but not limited to the prior, similar allegations in *Alonzo D. Jones v. County of York*, et al. Civil No. 1:19-CV-00229, *Jacobs v. Cty. of York*, No.1:17-CV-00904 (M.D. Pa. filed May 22, 2017); *Henderson v. Bellfry*, No.1:18-CV-01191 (M.D. Pa filed June 12, 2018); *Stough v. Meyers*, No.1:18-CV-01417 (M.D. Pa filed July 7, 2018); *Moss v. Miller*, No.1:18-CV-02122 (M.D. Pa filed on Sept. 28, 2018); and *Hawkins v. Schauers*, No.1:19-CV-00171 (M.D. Pa filed Jan. 30, 2019).

156.    In *Jones*, Jones alleges that these same Defendants violated his Fourth and Fourteenth Amendment rights through a policy or custom of shielding officers from complaints of racial profiling, a policy or custom of fabricating information in affidavits, and a policy or custom of inadequately responding to citizen complaints about offending officers. Jones also alleges that Defendants Sunday and Gartrell maliciously prosecuted him.

157.    NYCRPD is and was aware of prior unlawful conduct as referenced above and, with deliberate indifference, has acquiesced in and has failed to take affirmative steps to correct such unlawful conduct and prevent future such misconduct by police officers including by Officer Lebo, Sgt. Asper, and Lt. Migatulski.

158.    NYCRPD despite its knowledge of such conduct in the past, has failed to establish policies practices and procedures to ensure that such conduct does not occur in the future, which amounts to deliberate indifference to the rights of persons, including but not limited to Plaintiffs Richard Starks and Christian Starks.

159.    NYCRPD despite its knowledge of such conduct in the past, and knowing as municipal policymaker that police officers will confront such a particular situation as occurred in

the present case, that the situation involves a difficult choice or a history of employee/officer mishandling, and that the wrong choice by an employee/officer will frequently cause deprivation of constitutional rights, failed to ensure through training, supervision, and discipline that police officers will conduct an adequate investigation of similar situations involving assault (including by vehicle) and threatening use of and/or using firearms against other persons, and will properly and adequately preserve evidence regarding such situations, preserve the scene of such incidents, and examine and preserve vehicles and vehicular evidence, ballistic evidence and medical evidence, and to ensure that police officers will adequately and without delay respond to 911 emergency calls including calls reporting threats of using and/or the use of firearms against other persons, which amounts to deliberate indifference to the rights of persons, including but not limited to Plaintiffs Richard Starks and Christian Starks.

160.    Additionally, NYCRPD failed to train their police officers in issues regarding racial profiling and fabricating affidavits and fabricating statements. The officer is faced with a difficult choice to fabricate evidence to uphold a conviction or lose credibility and admit that the evidence does not support their conclusions.  Further, the evidence of this case shows that officers did not respond to or criticize the use of improper, derogatory, and racist language. If officers continue to make the wrong choice in using discriminatory, offensive, and derogatory language, coupled with racial profiling, in performing a police investigation, that will frequently cause the deprivation of constitutional rights.

161.    NYCRPD also has a history of engaging in unlawful conduct similar to the unlawful conduct in the present case.

162.    As a direct and proximate result of the NYCRPD violations of Plaintiffs Richard Starks and Christian Starks's constitutional rights and rights under federal law, the Plaintiffs have

sustained and continue to suffer severe emotional distress and mental anguish, including constant

fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety,

and significant financial and economic losses and harm.

WHEREFORE, Plaintiffs Richard Starks and Christian Starks each demand an award of

compensatory damages against Defendant Northern York County Regional Police Dept. and/or

its Board of Commissioners in an amount in excess of $150,000, an award of all damages

allowed, statutory damages as applicable under the law, reasonable attorney's fees and costs to

the extent allowable under the law, and such other and further relief as this Court determines is

reasonable and just based on the evidence and the law.

## COUNT VI

**CONSPIRACY FOR DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW**
**(Plaintiffs Richard Starks and Christian Starks v. Defendants Northern York County**
**Regional Police Dept. and/or its Board of Commissioners, Officer Lebo. Sergeant Asper,**
**and Lieutenant Migatulski)**

163.    All previous paragraphs are incorporated herein by reference as though fully set

forth at length.

164.    Defendants the NYCRPD, Officer Lebo, Sgt. Asper, and Lt. Migatulski

unlawfully, and with deliberate indifference, conspired to unlawfully deprive Richard Starks and

Christian Starks of their rights under federal law and the constitution.

165.    The acts and conduct of Defendants NYCRPD, Officer Lebo, Sgt. Asper, and Lt.

Migatulski as alleged above constitute an underlying constitutional violation, and also such acts

and conduct demonstrate and establish an agreement among these defendants to violate the

Plaintiffs' constitutionally protected rights.

166.    Defendants NYCRPD, Officer Lebo, Sgt. Asper, and Lt. Migatulski therefore are

liable for unlawful conspiracy under 42 U.S.C. Section 1983.

167.    As a result thereof, the Plaintiffs have sustained and continue to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm.

WHEREFORE, Plaintiffs Richard Starks and Christian Starks each demand an award of compensatory damages against Defendants NYCRPD Officer Lebo, Sgt. Asper, and Lt. Migatulski in an amount in excess of $150,000, an award of all damages allowed, statutory damages as applicable under the law, reasonable attorney's fees and costs to the extent allowable under the law, and such other and further relief as this Court determines is reasonable and just based on the evidence and the law.

## COUNT VII

### DEPRIVATION OF RIGHTS IN VIOLATION OF FEDERAL LAW
### (Plaintiffs Richard Starks and Christian Starks v. Defendant Heidelberg Township)

168.    All previous paragraphs are incorporated herein by reference as though fully set forth at length.

169.    NYCRPD. is liable under 42 U.S.C. Section 1983 for the unlawful deprivation of Richard Starks' and Christian Starks' rights under federal law and the constitution, as a result of the NYCRPD's policies, practices and/or customs.

170.    On information and belief, the NYCRPD (and/or its Board of Commissioners) is an agency and part of Defendant Heidelberg Township, performing a governmental function and providing police services and protection of the community for the benefit of Defendant Heidelberg Township on its behalf and with its authorization.

171.    Accordingly, Defendant Heidelberg Township is liable under 42 U.S.C. Section 1983 for Defendant NYCRPD and/or its Board of Commissioners' unlawful deprivation of

Richard Starks' and Christian Starks' rights under federal law and the constitution, as alleged above.

172.    As a direct and proximate result of such violations of Plaintiffs Richard Starks' and Christian Starks's constitutional rights and rights under federal law, the Plaintiffs have sustained and continue to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm.

WHEREFORE, Plaintiffs Richard Starks and Christian Starks each demand an award of compensatory damages against Defendant Heidelberg Township in an amount in excess of $150,000, an award of all damages allowed, statutory damages as applicable under the law, reasonable attorney's fees and costs to the extent allowable under the law, and such other and further relief as this Court determines is reasonable and just based on the evidence and the law

## COUNT VIII
## VIOLATION OF STATE LAW
## ASSAULT AND BATTERY
### (Mr. Starks v. Ken Knight and Marvin Knight)

173.    All previous paragraphs are incorporated by reference herein as if set more fully at length.

174.    Mr. Knight threatened Mr. Starks with violence, and physically caused violence and damage by intentionally driving a vehicle and causing a collision with the Tesla, and the person of Mr. Starks.

175.    Even though Mr. Starks was not aware of Mr. Knight's identity at the time of the Incident, Mr. Starks was very aware of the threat from Mr. Knight's acts.

176.    Mr. Knight's acts created a reasonable apprehension in Mr. Starks of an immediate harmful or offensive contact to Mr. Starks' person.

177.    Marvin Knight's act caused reasonable fear and apprehension of imminent harmful and offensive contact to Mr. Starks.

178.    Mr. Knight intentionally caused harmful or offensive contact to Mr. Starks

179.    Marvin Knight intentionally caused harmful or offensive contact to Mr. Starks.

180.    By the acts of Mr. Knight and Marvin Knight, Mr. Starks suffered damages to himself and his property in an amount in excess of $150,000.00

181.    Mr. Starks suffered pain and suffering, loss of employment, loss of business, and monetary damages as a result of the actions of  Mr. Knight and Marvin Knight

182.    Wherefore, Mr. Starks demands judgment in his favor and against Mr. Knight and Marvin Knight in an amount greater than $150,000.00 together with interest, costs, punitive damages, attorney fees, post and pre-suit interest, and any other remedies allowable under the law, including equitable and injunctive relief.

### COUNT IX
### VIOLATION OF STATE LAW
### ASSAULT AND BATTERY
### (Christian Starks v. Ken Knight and Marvin Knight)

183.    All previous paragraphs are incorporated by reference herein as if set more fully at length.

184.    Mr. Knight threatened Christian Starks with violence, and physically caused violence and damage by intentionally driving a vehicle and causing a collision with the Tesla, and the person of Mr. Starks.

185.    Even though Christian Starks was not aware of Mr. Knight's identity at the time of the Incident, Mr. Starks was very aware of the threat from Mr. Knight's acts.

186.    Mr. Knight's acts created a reasonable apprehension in Christian Starks of an immediate harmful or offensive contact to Mr. Starks' person.

187.     Marvin Knight's act caused reasonable fear and apprehension of imminent harmful and offensive contact to Christian Starks

188.     Mr. Knight intentionally caused harmful or offensive contact to Christian Starks

189.     Marvin Knight intentionally caused harmful or offensive contact to Christian Starks.

190.     By the acts of Mr. Knight and Marvin Knight, Christian Starks suffered damages to himself and his property in an amount in excess of $100,000.00

191.     Wherefore, Christian Starks demands judgment in his favor and against Mr. Knight and Marvin Knight in an amount greater than $100,000.00 together with interest, costs, punitive damages, attorney fees, post and pre-suit interest, and any other remedies allowable under the law, including equitable and injunctive relief.

### COUNT X
### VIOLATION OF STATE LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Richard Starks v. Ken Knight, Marvin Knight, Officer Lebo, NYCRPD, Heidlberg Township, Sgt. Asper, and Lt. Migatulski)

192.     All previous paragraphs are incorporated herein as if set more fully at length.

193.     Defendants' extreme and outrageous conduct caused Mr. Starks severe emotional distress.

194.     On May 2, 2022, Mr. Starks called 9-1-1 on multiple occasions in response to an unknown man threatening the business, employees, customers, and dogs, and his son.

195.     Defendants intentionally ignored Mr. Starks' 9-1-1 calls for help.

196.     Defendants reached a decision regarding Mr. Starks' guilt prior to arriving at the scene.

197.     At the scene, Mr. Starks, the man who called 9-1-1 for help, was referred to as a "foreigner" and the "fat guy" on multiple occasions.

198.     At the scene, Mr. Starks witnessed his son experience racism and xenophobia by the very people he called for help as Defendants mocked Mr. Starks' son's race and ethnicity, "this Chinese guy, Korean guy, or whatever."

199.     Mr. Starks was a bystander and present when Defendants mocked Mr. Stark's son's race and ethnicity.

200.     Mr. Starks is a close relative of the third party, as it is his son, and Defendants knew these facts.

201.     Defendants were reckless as to the severe and emotional effect of the defendant's conduct.

202.     As a result of Defendants' conduct, Mr. Starks has and continues to suffer severe emotional damages.

203.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in an amount greater than $100,000.00 together with interest, costs, punitive damages, attorney fees, post and pre-suit interest, and any other remedies allowable under the law, including equitable and injunctive relief.

### COUNT XI
### VIOLATION OF STATE LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Christian Starks v. Ken Knight, Marvin Knight, Officer Lebo, NYCRPD, Heidlberg Township, Sgt. Asper, and Lt. Migatulski)

204.     All previous paragraphs are incorporated herein as if set more fully at length.

205.     Defendants' extreme and outrageous conduct caused Christian Starks severe emotional distress.

206.     Defendants intentionally ignored Mr. Starks' 9-1-1 calls for help.

207.     Defendants reached a decision regarding Mr. Starks' guilt prior to arriving at the

scene.

208.     At the scene, Sgt. Asper called Christian Starks racial offensive names and used

racial offensive and derogatory statements.

209.     Christian Starks experienced racism and xenophobia by the very people he called

for help as Defendants called Christian Starks "this Chinese guy, Korean guy, or

whatever."

210.     Defendants were intentional and reckless as to the severe and emotional effect of

the conduct.

211.     As a result of Defendants' conduct, Christian Starks has and continues to suffer

severe emotional damages.

212.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in

an amount greater than $100,000.00 together with interest, costs, punitive damages,

attorney fees, post and pre-suit interest, and any other remedies allowable under the law,

including equitable and injunctive relief.

## COUNT XII
### VIOLATION OF STATE LAW
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Richard Starks and Christian Starks v. Ken Knight, Marvin Knight, Officer Lebo, NYCRPD, Heidlberg Township, Sgt. Asper, and Lt. Migatulski)**

213.     Ken Knight, Marvin Knight, Sgt. Asper, Lt. Migatulski, Officer Lebo, Heidlberg

Township, and the NYCRPD all caused emotional distress to Richard Starks and

Christian Starks.

214.     Defendants negligently caused severe emotional distress to Richard Starks and

Christian Starks by assaulting, threatening, and causing physical violence at the Incident

including Paws and Knight's Family Farm.

215.     Defendants caused severe emotional distress to Richard Starks and Christian

Starks by using racial offensive language, racial profiling Mr. Starks and Christian Starks,

and failing to do a proper investigation, and restraining Mr. Starks and Christian Starks

for a prolonged period of time while undergoing police questioning and accusations

during an improper police investigation at the Incident including Paws and Knight's

Family Farm.

216.     As a direct and proximate cause of the actions of Defendants, Mr. Starks and

Christian Starks suffered severe pain, emotional distress, mental anguish, physical

injuries, monetary damages, and other damages as a result of the actions of Defendants.

217.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in

an amount greater than $100,000.00 together with interest, costs, punitive damages,

attorney fees, post and pre-suit interest, and any other remedies allowable under the law,

including equitable and injunctive relief.

**COUNT XIII**
**VIOLATION OF STATE LAW**
**NEGLIGENCE**
**(Richard Starks v. Ken Knight)**

218.     All previous paragraphs are incorporated by reference herein as if set more fully

at length.

219.     Ken Knight had a duty to drive his vehicle with safety.

220.     Ken Knight breached that duty when he intentionally rammed his car in to

Richard Starks and his Tesla.

221.     Ken Knight caused damage to Richard Starks vehicle, Tesla, and his person.

222.     Ken Knight's actions were the direct and proximate cause of the damages to

Richard Starks and his vehicle.

223.     Richard Starks suffered damages in excess of $150,000.00 due to the actions of

Ken Knight.

224.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in

an amount greater than $150,000.00 together with interest, costs, punitive damages,

attorney fees, post and pre-suit interest, and any other remedies allowable under the law,

including equitable and injunctive relief.

## COUNT XIV
## VIOLATION OF STATE LAW
## MALICIOUS PROSECUTION
**(Richard Starks v. Officer Lebo, NYCRPD, Heidlberg Township, Sgt. Asper, and Lt. Migatulski)**

225.     All previous paragraphs are incorporated by reference herein as if set more fully

at length.

226.     Defendants caused and/or initiated a criminal proceeding against Mr. Starks

docket no.

227.     The affidavit of Probable Cause did not establish probable cause to arrest and

contains material misstatements.

228.     The Affidavit of Probable Cause contain statements inconsistent with Tammy

Diehl's in-court statements during the jury trial in the criminal matter. The

Commonwealth withdrew the charges after Tammy Diehl lied on the witness stand, as the

Commonwealth stated that they did not have "sufficient evidence."

229.     The criminal proceeding was dismissed with prejudice on April 03, 2024 due to, among other things, a violation of Brady and the Commonwealth not having sufficient evidence to proceed.

230.     Defendants acted maliciously or for a purpose other than bringing defendant to justice.

231.     Defendants used derogatory terms toward Mr. Starks and Christian Starks, stated that they were probably drug dealers due to the race of Plaintiffs and intentionally withheld exculpatory evidence from Mr. Starks and/or his criminal defense attorneys in failing to disclose exculpatory and impeachment materials and intentionally not completing an investigation to prevent exculpatory evidence from being produced.

232.     Mr. Starks was deprived of his liberty where he was arrested, incarcerated, placed on house arrest, had his travel restricted, and was forced to live under the eye of the court for almost two years.

233.     Wherefore, Mr. Starks suffered damages as the direct and proximate cause of the malicious prosecution by Defendants.

234.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in an amount greater than $150,000.00 together with interest, costs, punitive damages, attorney fees, post and pre-suit interest, and any other remedies allowable under the law, including equitable and injunctive relief.

## COUNT XV
## VIOLATION OF STATE LAW
## CIVIL CONSPIRACY
**(Richard Starks v. Officer Lebo, NYCRPD, Heidlberg Township, Sgt. Asper, and Lt. Migatulski)**

235.     All previous paragraphs are incorporated by reference herein as if set more fully at length.

236.     There was an agreement between Defendants.

237.     Defendants agreed to act in concert to inflict an unconstitutional injury to Mr. Starks.

238.     Defendants made an overt act in furtherance of that goal.

239.     As a result, Mr. Starks suffered damages in an amount in excess of $150,000.00.

240.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in an amount greater than $150,000.00 together with interest, costs, punitive damages, attorney fees, post and pre-suit interest, and any other remedies allowable under the law, including equitable and injunctive relief.

<u>COUNT XVI</u>
**VIOLATION OF STATE LAW**
**CIVIL CONSPIRACY**
**(Richard Starks v. Marvin Knight and Ken Knight)**

241.     All previous paragraphs are incorporated by reference herein as if set more fully at length.

242.     There was an agreement between Defendants.

243.     Defendants agreed to act in concert to inflict an unconstitutional injury to Mr. Starks.

244.     Defendants made an overt act in furtherance of that goal.

245.     As a result, Mr. Starks suffered damages in an amount in excess of $150,000.00.

246.     Wherefore, Mr. Starks demands judgment in his favor and against Defendants in an amount greater than $150,000.00 together with interest, costs, punitive damages,

attorney fees, post and pre-suit interest, and any other remedies allowable under the law, including equitable and injunctive relief.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs Demand Judgment in their favor and against Defendants and request the following relief: Compensatory damages against each Defendant, jointly and severally, in an amount to be proven at trial; Punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant and deter others from engaging in similar misconduct; Costs of suit; Reasonable attorney's fees, and as otherwise authorized by statute or law; Pre- and post-judgment interest as permitted by law; and Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

Dated:  May 1, 2024

MANDRACCHIA LAW, LLC
By: /s/ Charles D. Mandracchia
Charles D. Mandracchia, Esquire
Jeffrey W. Soderberg, Esquire
PA Attorney I.D. Nos. 52844 & 55369
Office: 272 Ruth Road, Harleysville, PA 19438
Mail Address: P.O. Box 1229, Skippack, PA 19474
610-584-0700

Christopher D. Mandracchia, Esq.
PA Attorney Id No. 310041
CDM LAW
815 Fayette St., STE 200
Conshohocken PA 19428
610-994-0281