IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD LOUIS STARKS and CHRISTIAN STARKS, : : : Plaintiffs, : : v. : : NORTHERN YORK COUNTY REGIONAL POLICE DEPARTMENT, *et al.*, : : : Defendants. : | Civil No. 1:24-CV-00739 Judge Jennifer P. Wilson |

## **MEMORANDUM**

This case arises from a violent dispute amongst neighbors that ultimately led to a failed prosecution for attempted murder. The man charged with attempted murder, Plaintiff Richard Louis Starks ("Starks"), and his son Christian Starks ("Christian") now bring this lawsuit against, *inter alia*, William Kenneth Knight ("Knight") and Marvin Knight—the two other men allegedly involved in the incident. Currently before the court is a motion to dismiss Knight's counterclaim filed by Plaintiffs. Upon review, the court finds that Knight's counterclaim has failed to identify a specific basis or bases for recovery. Accordingly, the court will grant the motion to dismiss.

### **BACKGROUND**

The court assumes familiarity with its previous account of the facts of this matter, which were derived from Plaintiffs' amended complaint. *Starks v. N. York*

1

*Cty. Reg'l Police Dep't*, No. 24-CV-00739, 2025 WL 895826, at *1–3 (M.D. Pa. Mar. 24, 2025). To resolve the instant motion, the court considers the facts alleged in Knight's counterclaim.

On May 2, 2022, Starks was at his parents' farm in Hanover, Pennsylvania. (Doc. 59, p. 7.)[1] As he was leaving, Starks encountered Knight on a private lane on the farm just off Cannery Road ("Farm Lane"). (*Id.*) Starks allegedly was blocking the Farm Lane with his vehicle. (*Id.*) Starks then allegedly began firing a rifle at Knight without provocation nor in self-defense. (*Id.*) Knight did not return to his parents' home out for fear for their safety. (*Id.*) Instead, he attempted to flee towards Cannery Road by driving around Starks's vehicle. (*Id.*) Due to the distraction caused by Starks's alleged gunfire, however, Knight collided his vehicle with Starks's. (*Id.*) Starks allegedly continued to fire at Knight following the collision. (*Id.*) Knight exited his vehicle and attempted to take cover behind his vehicle. (*Id.*) At this point, Starks approached Knight, began hitting him with the butt of his rifle, and threatened to kill him. (*Id.*) Starks also allegedly called Christian, asking him to bring more guns and ammunition. (*Id.*) The incident purportedly ended when law enforcement responded to the Farm Lane. (*See id.*) Knight alleges that, as a result of Starks's action, he suffered a concussion and

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

continues to suffer from having bullet fragments lodged in his body, a drooping eye that causes permanently impaired vision, and hearing loss. (*Id.* at 8.)

Plaintiffs' amended complaint details a very different version of events. According to Starks, before Starks and Knight encountered each other on the Farm Lane, Knight allegedly had gone to Starks's business, Paws Pet Resort ("Paws"), and threatened to "blow the place up" and poison the dogs located there. (Doc. 25, ¶ 46.) Christian reported the confrontation to Starks, who was not present at the time. (*See id.* ¶ 51.) Christian later called Starks to inform him that Knight had briefly returned to Paws, this time with his father, Marvin Knight. (*Id.* ¶¶ 56–58.) Upon later arriving at Paws, Starks allegedly observed Knight on an adjacent property. (*Id.* ¶ 61.) In fear that Knight might return to make good on his promises, Starks allegedly followed Knight to the Farm Lane in order to obtain Knight's license plate number. (*Id.* ¶ 66.) On the Farm Lane, Starks alleges that Knight twice intentionally and violently drove into his vehicle before any shots were fired. (*Id.* ¶¶ 75–78.) Starks contends that he fired upon Knight in self-defense following these collisions. (*See id.* ¶ 87.)

On this theory, Starks and Christian sued Knight and Marvin Knight for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and civil conspiracy. (*Id.* ¶¶ 247–92, 307–11.) In response, Knight initially filed a "counterclaim for setoff and recoupment." (Doc.

3

55, p. 7.)  Knight then filed an amended counterclaim, which he styles as "counterclaim for setoff." (Doc. 59, p. 7.)  Starks and Christian moved to dismiss the counterclaim and filed a brief in support of their motion.  (Docs. 65 & 66.)  Knight responded with a brief in opposition.  (Doc. 67.)  Starks and Christian did not file a reply brief.  This motion is, thus, ripe for adjudication.

## JURISDICTION

Plaintiffs amended complaint asserts claims arising under the Constitution of the United States as well as claims arising under the laws of Pennsylvania.[2]  The court has subject matter jurisdiction over Plaintiffs' constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.  Venue properly lies in this court pursuant to 28 U.S.C. 1391(b).

## STANDARD OF REVIEW

Plaintiffs' motion seeks dismissal of Knight's counterclaim pursuant to Federal Rule of Civil Procedure 12(b), but does not specify the sub-provision of Rule 12(b) upon which they rely.  (Doc. 65, p. 1).  Nevertheless, their brief in support makes clear that they rely upon Rule 12(b)(6).  (*See* Doc. 66, pp. 3–4.)

---

[2] In addition to their claims against Knight, Plaintiffs also brought various constitutional claims against Heidelberg Township, the Northern York County Regional Police Department, and several law enforcement officers.  None of these claims are relevant to the instant motion.

Courts adjudge a motion to dismiss a counterclaim using the same standard applicable to a motion to dismiss affirmative claims in a complaint. *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

**DISCUSSION**

Starks advances several arguments as to why the court should dismiss Knight's counterclaim. The court need not address every argument, because it agrees with Starks that Knight has failed to identify a basis for relief. A "setoff" is not an independent basis for recovery, it is a type of "counterdemand against the plaintiff." *Setoff*, Black's Law Dictionary (12 ed. 2024). Simply stating a "counterclaim for setoff" does not sufficiently identify a legal basis for recovery. A brief overview of the history of setoffs is useful.

The Federal Rules of Civil Procedure permit "counterclaims." Fed. R. Civ. P. 13. However, "[t]he term 'counterclaim' was not known to the common law." 20 Am. Jur. 2d *Counterclaim, Recoupment, Etc.* § 1 (May 2025 Update). Instead, the concept of "counterclaims" grew out of "the common-law doctrines of setoff and recoupment." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1401 (3d ed. April 2025 Update) (hereinafter "Wright & Miller"). The doctrine of setoff "was first used by the [English] courts of equity as a discretionary procedural device in order to prevent multiplicity of actions." *In re HAL, Inc.*, 196 B.R. 159, 162 (B.A.P. 9th Cir. 1996), *aff'd*, 122 F.3d 851 (9th Cir. 1997). It permitted a defendant to assert a "counter-claim demand . . . against plaintiff, arising out of a transaction *extrinsic* of plaintiff's cause of action." *M.N.C. Corp. v. Mount Lebanon Med. Ctr., Inc.*, 509 A.2d 1256, 1259 (Pa. 1986)

(quoting *Setoff*, Black's Law Dictionary (rev. 5th ed. 1979)); *accord* Wright & Miller § 1401 ("'setoff' . . . referred to a claim by defendant that was unrelated to plaintiff's claim . . . and permitted defendant to assert an affirmative claim for relief"). The doctrine of setoff, therefore, "prevented a court from having to entertain two separate lawsuits, enter two separate judgments, and require the parties to try and collect on their individual judgments." *In re HAL, Inc.*, 196 B.R. at 162.

Properly understood, a setoff is a type of counterclaim. *See Perry Commc'ns, Inc. v. Adderley Indus., Inc.*, Civil No. 94-4423, 1995 WL 131930, at *1 (E.D. Pa. Mar. 27, 1995) ("A counterclaim for affirmative relief is known as a 'set-off.'") American courts once recognized a distinction between counterclaims and setoffs. *See* Wright & Miller § 1406 (noting that the old Equity Rules permitted a defendant to bring a "set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity"). Courts no longer recognize such and, instead, permit defendants simply to bring "counterclaims." Fed. R. Civ. P. 13. Accordingly, the formal distinction between setoffs and counterclaims has become irrelevant. *Cf.* 6 *Standard Pennsylvania Practice* 2d § 29:1 (March 2025 Update) ("Whether the defendant's claim is technically a counterclaim, a setoff, a recoupment, or any other type of cross-action is no longer relevant since the

7

[Pennsylvania] Rules of Civil Procedure abolish the former distinctions between counterclaim and setoff or recoupment.")

With this background in mind, it is clear that a setoff is a procedural mechanism through which a claim is brought, not a legal basis for recovery. Knight argues that he has asserted a "cause of action" for setoff. He further argues that Pennsylvania law recognizes such a claim. In support of his position, Knight relies upon the following quote from a Pennsylvania Commonwealth Court opinion: "A setoff . . . is a cause of action brought by the defendant in opposition to a plaintiff's claim and seeks affirmative relief against the plaintiff." *Kaiser by Taylor v. Monitrend Inv. Mgmt., Inc.*, 672 A.2d 359, 362–63 (Pa. Commw. Ct. 1996). Knight's reliance on *Kaiser* is misplaced. That court simply recognized what is discussed above, *i.e.*, that a setoff is a mechanism through which a defendant may assert affirmative claims against a plaintiff. *See id.* Knight provides no authority suggesting "setoff" is itself a cognizable basis for recovery under Pennsylvania law nor explains how his counterclaim alleges facts that make out a *prima facie* case for such a claim.

It is plausible that the facts Knight alleges in his counterclaim give rise to a legal claim against Starks. But, simply stating a "counterclaim for setoff" without identifying the legal basis justifying recovery is insufficient. *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 534–35 (E.D. Pa. 2013). Knight must

8

identify a specific claim or claims. Since he has not done so here, the court will dismiss his counterclaim. The court is not in a position to evaluate whether amendment would be futile, because the amended counterclaim does not indicate what claim or claims Knight intends to state. Therefore, dismissal of the counterclaim will be without prejudice.

## CONCLUSION

For the reasons stated above, the court will dismiss Knight's counterclaim without prejudice.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 16, 2025