# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LOUIS STARKS and CHRISTIAN STARKS | : | Civil No. 1:24-CV-00739 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHERN YORK COUNTY REGIONAL POLICE DEPARTMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Currently before the court is a motion to dismiss filed by Plaintiffs Richard Louis Starks ("Starks") and Christian Starks ("Christian").  Plaintiffs contend that the counterclaim for intentional infliction of emotional distress ("IIED") asserted by Defendant William Kenneth Knight ("Knight") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon review, the court finds that Knight's counterclaim successfully states an IIED claim.  Accordingly, the court will deny Plaintiffs' motion to dismiss.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court assumes familiarity with its previous account of the facts of this matter, which was derived from Plaintiffs' amended complaint.  *Starks v. N. York Cty. Reg'l Police Dep't*, No. 24-CV-00739, 2025 WL 895826, at *1–3 (M.D. Pa.

1

Mar. 24, 2025).  To resolve the instant motion, this court considers the facts as alleged in Knight's second amended counterclaim and crossclaim.

On May 2, 2022, Knight departed from his parents' farm in Hanover, Pennsylvania.  (Doc. 81, p. 7.)  As he drove down the farm's private lane just off of Cannery Road ("Farm Lane"), he encountered Starks blocking the roadway with his vehicle.  (Doc. 81, p. 7).  Then, Starks allegedly fired his rifle at Knight without provocation.  (*Id.*)  Knight did not retreat back to his parents' farm in fear for their safety.  (*Id.*)  Instead, Knight tried to flee by driving around Starks's vehicle towards Cannery Road.  (*Id.*)  Knight was distracted by Starks's gunfire, however, and collided with Starks's vehicle.  (*Id.*)  After the collision, Starks continued firing his gun at Knight.  (*Id.*)  In response, Knight took cover behind his vehicle. (*Id.*).  Starks then allegedly approached Knight, repeatedly struck him with the butt of his rifle, and threatened Knight's life.  (*Id.*)  Starks also allegedly called his son, Christian, and requested he bring more firearms and ammunition.  (*Id.*)  The altercation ended when law enforcement arrived at the scene.  (*Id.*)  Knight reports that Starks's alleged actions caused him to suffer a concussion and causes him to continue suffering from embedded bullet fragments and shrapnel in his body, a drooping eye with permanently impaired vision, and hearing loss in his right ear. (*Id.*).  Knight also alleges he suffered emotional distress, financial injury, and ongoing symptoms of post-traumatic stress disorder.  (*Id.* at 8.)

Starks asserts a very different version of events.  Starks claims that before the altercation on the Farm Lane, Knight went to Starks's business, Paws Pet Resort ("Paws") and made threats to "blow the place up" and poison the dogs there.  (Doc. 25, ¶ 46).  Christian reported Knight's alleged behavior to Starks, who was not present.  (*Id.* ¶ 51.)  Upon arriving at Paws, Starks observed Knight lingering nearby.  (*Id.* ¶ 61).  In fear for his and Christian's safety, Starks followed Knight to the Farm Lane to stop Knight from returning to Paws and to obtain Knight's license plate number to report to 9-1-1.  (*Id.* ¶ 65).  During the encounter on the Farm Lane, Starks alleges that Knight intentionally drove into his vehicle twice before any shots were fired.  (*Id.* ¶¶ 75-78).  Starks contends that he fired upon Knight in self-defense following these collisions.  (*See id.* ¶ 87.)  On this theory, Starks and Christian brought suit against, *inter alios*, Knight for assault, battery, and IIED, negligent infliction of emotional distress, negligence, and civil conspiracy.  (*Id.* ¶¶ 247–92, 307–11).[1]

In response to Starks's claims, Knight brings counterclaims for assault, battery, and IIED against Starks.  (Doc. 81, ¶¶ 16–21, p. 9).[2]  Starks and Christian

---

[1] Starks also brought suit against the Northern York County Regional Police Department, various of its officers, and Heidelberg Township for multiple constitutional law claims.  (*Id.* ¶¶ 182–246).  Those claims are not at issue here.

[2] Knight initially brought a "counterclaim for setoff and recoupment."  (Doc. 55, p. 7.)  He later filed an amended counterclaim, which he styled as a "counterclaim for setoff."  (Doc. 59, p. 7.)  The court dismissed that counterclaim without prejudice.  (Doc. 80.)

moved to dismiss Knight's IIED counterclaim and filed a brief in support of the motion.  (Doc. 83 & 84).  Knight responded with a brief in opposition.  (Doc. 86).[3] Starks and Christian did not file a reply brief.  This motion is, thus, ripe for adjudication.

## JURISDICTION

Plaintiffs' amended complaint asserts constitutional claims and Pennsylvania state law claims.  Knight asserts Pennsylvania state law counterclaims.  This court has subject matter jurisdiction over Plaintiffs' constitutional claims under 28 U.S.C. § 1331 and supplemental jurisdiction over both Plaintiffs' and Knight's state law claims under 28. U.S.C. § 1367.  Venue properly lies in this court pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

Plaintiffs' motion seeks to dismiss the IIED count of Knight's second amended counterclaim pursuant to Federal Rule of Procedure 12(b), but does not indicate the subsection of Rule 12(b) upon which they rely.  (Doc. 83, p. 1). However, their brief in support makes clear that they rely upon Rule 12(b)(6). (Doc. 84, p. 3).  Courts review motions to dismiss a counterclaim using the same

---

[3] Knight filed two identical briefs in opposition, Docs. 85 and 86.  Both were filed on July 28, 2025.  The court refers only to the later filed brief, Doc. 86.

standard applicable to a motion to dismiss claims in a complaint.  *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011).  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

### DISCUSSION

 Plaintiffs' motion seeks to dismiss only the IIED count of Knight's counterclaim.  Pennsylvania courts have adopted the definition of IIED laid out in

the Restatement (Second) of Torts § 46 (A.L.I. 1979).  *See Kazatsky v. King David Memorial Park*, 527 A.2d 988, 991–92 (Pa. 1987); *Hunger v. Grand Cent. Sanitation*, 447 670 A.2d 173, 177 (Pa. Super. Ct. 1996); *DeMaria v. Rusbasan*, 45 Pa. D. & C.5th 30, 38 (Monroe Cty. C.P. 2015).  Under § 46, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Restatement (Second) of Torts, § 46.  From this definition, Pennsylvania courts have identified four elements to establish the tort of IIED: (1) defendant's conduct was intentional or reckless, (2) defendant's conduct was extreme and outrageous, (3) defendant's conduct caused emotional distress, and (4) the distress was severe.  *Kornegey v. City of Philadelphia*, 299 F.Supp.3d 675, 683 (E.D. Pa. 2018).  Additionally, plaintiffs must allege some physical harm due to defendant's conduct.  *Reeves v. Middletown Ath. Ass'n*, 866 A.2d 1115, 1122–23 (Pa. Super. Ct. 2004).

Plaintiffs claim that Knight failed to state an IIED claim for two independent reasons.  Specifically, they allege that (1) Knight did not properly allege he suffered physical harm resulting from the alleged emotional distress caused by Starks, and (2) Knight did not confirm he received medical treatment with competent medical evidence.  Neither of these reasons are availing.

6

**A. Knight Has Adequately Pleaded the Physical Harm Element of IIED.**

Both Knight and Plaintiffs agree that Pennsylvania courts require physical harm for an IIED claim to succeed. Knight alleges that Starks caused him various bodily injuries from their altercation. Plaintiffs contend Knight does not adequately plead physical harm specifically arising from his alleged distress. Plaintiffs' argument on this matter is short and conclusory. Their argument consists of a single sentence in their brief in support. (Doc. 84, p. 6). Notably, Plaintiffs cite no case law in support of this argument.

Plaintiffs' argument, however, is not as trivial as their limited argument suggests. Courts have recognized that physical harm that was not caused by a defendant's conduct is insufficient to support an IIED claim. *Fulton v. United States*, 198 Fed. Appx. 210, at *215 (3d. Cir. 2006). The plaintiff in *Fulton* was a prison inmate missing his left leg. *Id.* at *211. Prison officials placed the plaintiff in the special housing unit (SHU), which lacked handicapped showers. *Id.* Prison officials eventually forced the plaintiff to shower, providing him with a chair. *Id.* The plaintiff fell out of the chair and alleged physical injury from the fall. *Id.* The court noted that IIED claims in Pennsylvania require a "manifestation of physical impairment resulting from the distress." *Id.* at *215. In *Fulton*, the plaintiff alleged distress from being placed in the SHU, not from falling in the shower. *Id.*

7

Since the plaintiff failed to plead physical harm resulting from his placement in the SHU, the plaintiff did not adequately plead physical harm. *Id.*

Other plaintiffs have successfully pleaded an IIED claim arising from a physical altercation. *Hall v. Raech*, No. 08-cv-5020, 2009 WL 811503 at *7 (E.D. Pa. Mar. 25, 2009). In *Hall*, the plaintiff, a diabetic, was pulled from his car and assaulted by police officers. *Id.* at *7. The plaintiff suffered physical injuries, as well as sleeplessness, headaches, anxiety, and embarrassment. *Id.* The plaintiff's physical injuries and other symptoms arose from the source of his distress–the defendant police officers' physical assault on him. *Id.* The court found the plaintiff's physical injuries and other symptoms resulting from the altercation were sufficient to adequately plead physical harm. *Id.*

In this case, Knight adequately pleads physical harm from the emotionally distressing conduct by Starks. Similar to *Hall*, Knight alleges IIED arising from the physical altercation with Starks. It was during this altercation that Knight suffered a concussion, embedded bullet fragments and shrapnel in his body, permanently impaired vision, and hearing loss in his right ear. Unlike *Fulton*, Knight does not allege physical harm from some remote consequence of his alleged distress. Rather, he alleges physical harm from the direct source of his distress–Starks's conduct during the altercation on the Farm Lane. Knight also claims he suffers ongoing symptoms of post-traumatic stress disorder ("PTSD") as

a result of the altercation.  Knight's physical injuries and ongoing PTSD symptoms from the altercation are certainly sufficient to satisfy the physical harm requirement of IIED.

### B. Medical Evidence Is Not Necessary For an IIED Claim to Survive A Motion to Dismiss.

Starks asserts that medical evidence is required to properly state a claim for IIED.  He relies on *DeMaria v. Rusbasan*, 45 Pa. D. & C.5th 30 (Monroe Cty. C.P. 2015), which states that "[a] plaintiff pleading the existence of emotional distress must substantiate that he or she actually suffered the claimed distress with expert medical confirmation."  *Id.* at 41.  *DeMaria* relies on *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (Pa. 1987).  There is a split in district court opinions on this requirement among federal district courts applying Pennsylvania law.  *See Kornegey*, 299 F.Supp.3d at 684 (collecting cases).  Some courts require medical evidence at the pleading stage.  *Id.* at 684, n.42.  Others do not.  *Id.*  The court's holding in *Kazatsky* created this split.

In *Kazatsky*, the plaintiffs sued a cemetery company for IIED.  *Kazatsky*, 527 A.2d at 988.  Specifically, the plaintiffs alleged that the defendant inadequately installed and cared for their deceased children's graves.  *Id.* at 991. After the case went to trial, the trial court granted defendant's nonsuit.  *Id.* at 989. The Pennsylvania Supreme Court affirmed the nonsuit, reasoning that the plaintiffs

failed to present any "expert medical confirmation" of their distress. *Id.* at 995. Without this evidence, the court explained, the plaintiffs failed to prove they suffered the alleged distress. *Id.*

Federal courts in Pennsylvania differ in their interpretation of *Kazatsky*. Some courts have interpreted *Kazatsky* to mean medical evidence is necessary at the pleading stage. *Rosenberg v. Thomas Jefferson University Hospital, Inc.*, No. 15-cv-4208, 2016 WL 2766504 at *2, (E.D. Pa. May 13, 2016). *See also Buttermore v. Loans*, No. 15-cv-1514, 2016 WL 308875 at *9 (W.D. Pa. Jan. 25, 2016); *McComb v. Morgan Stanley & Co.*, No. 07-cv-1049, 2007 WL 4150786 at *8 (W.D. Pa. Nov. 19, 2007); *Doe v. Equifax Serv. Inc.*, No. 88–3872, 1989 WL 57348 at *9 (E.D. Pa. May 26, 1989). Conversely, others have found that *Kazatsky* does not impose this heightened pleading standard. *Hall*, 2009 WL 811503 at *7. *See also Clair v. Borough of New Brighton*, No. 16-cv-00667, 2016 WL 4396171 at *5 (W.D. Pa. Aug. 18, 2016); *Mascarini v. Quality Emp. Serv. & Training*, No. 10-cv-1546, 2011 WL 332425 at *9 (M.D. Pa. Jan. 31, 2011); *E.N v. Susquehanna Tp. School Dist.*, No. 09-cv-1727, 2010 WL 4853700 at *19 n.16 (M.D. Pa. Nov. 23, 2010); *Sullivan v. Warminster Tp.*, No. 07-cv-4447, 2010 WL 2164520 at *9 (E.D. Pa. May 27, 2010). In fact, the majority of federal district courts in Pennsylvania have taken this latter approach. *Kornegey*, 299 F.Supp.3d at 684, n.42. The *Kornegey* court stated there was "nothing in the text of *Kazatsky* itself

10

that suggests the court intended to create a heightened pleading requirement." *Id.* at 684.

The court agrees with the majority of courts that have found *Kazatsky* does not require medical evidence at the pleading stage. The rationale behind requiring medical evidence, as stated in *Kazatsky,* is to substantiate plaintiff's claim that he or she actually suffered the claimed distress. At the complaint stage, the claimed distress must only be plausible. *Iqbal*, 556 U.S. at 678. As stated in *Kornegey*, there is nothing in the text of *Kazatsky* that suggests a requirement to heighten this pleading standard. Knight has alleged that he suffered not only numerous physical injuries from the altercation, but also ongoing symptoms of PTSD. Knight will eventually need to present medical evidence of his injuries for his IIED claim to succeed. It is enough at the complaint stage, however, that he alleges that he suffered these injuries. This court will follow the trend set by *Kornegey* and hold that medical evidence is not necessary for an IIED claim to survive a motion to dismiss.

## **CONCLUSION**

For the reasons stated above, the court will deny Starks's motion to dismiss Knight's counterclaim for intentional infliction of emotional distress.

s/Jennifer P. Wilson
JENNIFER P. WILSON
Unites States District Judge
Middle District of Pennsylvania

Dated: March 24, 2026

12